## TITLE & TRUST CO. v. WERNICH.
### No. 7249.

Circut Court of Appeals, Ninth Circuit.
Feb. 5, 1934.

John P. Hannon and A. C. Spencer, both of Portland, Or., for appellant.

Rauch, MacVeagh & Colon, Geo. L. Rauch, and Fred A. Knutsen, all of Portland, Or., and Liljeqvist & Swanton, of Marshfield, Or., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge.

WILBUR, Circuit Judge.

This is an appeal from an order of the District Court, sitting in bankruptcy, denying the petition of the Title & Trust Com-

pany for leave to institute foreclosure proceedings in the Circuit Court of the state of Oregon upon certain real estate owned by the bankrupt subject to a mortgage or trust deed executed by the predecessor in interest of the bankrupt to the Title & Trust Company, as trustee, to secure $50,000 owing to the Hibernia Commercial & Savings Bank, cestui que trust. The order denying the petition was qualified as follows:

"The petition * * * is denied until such time as the Title and Trust Company, a corporation, file an amended petition with the court, in which they shall offer to do equity by offering to repay to the trustee in bankruptcy, R. A. Wernich, the sum of twenty-one hundred dollars ($2,100) the sum expended and incurred by him on the preservation of the mortgaged property while it was in the bankrupt estate."

■ At the outset it should be stated that the matter of whether or not foreclosure shall be permitted rests entirely in the discretion of the bankruptcy court. Isaacs, Trustee, v. Hobbs Tie & Timber Co., 282 U. S. 734, 51 S. Ct. 270, 272, 75 L. Ed. 645. In that case the Supreme Court, speaking through Justice Roberts, said:

"Thus, while valid liens existing at the time of the commencement of a bankruptcy proceeding are preserved, it is solely within the power of a court of bankruptcy to ascertain their validity and amount and to decree the method of their liquidation. Ex parte City Bank of New Orleans, 3 How. 292, 11 L. Ed. 603; Houston v. City Bank of New Orleans, 6 How. 486, 12 L. Ed. 526; Ray v. Norseworthy, 23 Wall. 128, 23 L. Ed. 116; In re Wilka [(D. C.) 131 F. 1004], supra; Nisbet v. Federal Title & Trust Co. (C. C. A.) 229 F. 644."

After that decision, the Hobbs Tie & Timber Company petitioned the District Court, sitting in bankruptcy, for leave to foreclose its mortgage. Leave was denied and it appealed. The Circuit Court of Appeals of the Fifth Circuit affirmed the decision in Hobbs Tie & Timber Company v. Isaacs, 61 F.(2d) 1006, on the ground that the mortgagee could not demand as of right that consent be granted to foreclose the mortgage but that the matter lay in the discretion of the trial judge. It follows that the question involved in the present appeal is whether or not the trial judge abused his discretion in denying the appellant's petition for leave to sue.

Appellant petitioned for leave to bring foreclosure proceedings and alleged:

"That said property cannot be sold for a price or consideration exceeding the amount of the mortgage with interest, taxes, costs and insurance premiums.

"That said property is burdensome and without value to the said bankrupt estate and that there is no equity or benefit in said mortgaged property for the creditors or for the said trustee in bankruptcy."

The trustee in bankruptcy answered the petition admitting the default in the mortgage and specifically denying the allegations of the petition above quoted and further alleged that said timber lands and said saw mill are worth greatly in excess of the sum of $50,000 plus accrued interest; that he had employed watchmen to guard the mortgaged property and had paid $1,700 to them, and that their wages accrued and unpaid amounted to $400; that these watchmen were employed at the request and direction of the Hibernia Commercial & Savings Bank, the cestui que trustent of the mortgage, in order to prevent the voiding of the policies of fire insurance which required the presence of a watchman on the premises, and that the employment was in pursuance of express authority given by the referee to that effect. The trustee prayed for an order directing the Title & Trust Company to repay the sums paid by him for watchmen's services and for the sale of the property and the application of the proceeds to the mortgaged indebtedness and the surplus to the payment of expenses of administration and claims of creditors. The petitioner filed a reply denying that the watchmen were procured at the direction or request of the Hibernia Commercial & Savings Bank.

■ At this juncture it should be stated that there is no statement on appeal. General Order in Bankruptcy No. 36 (11 USCA § 53) provides that "appeals from a court of bankruptcy to the circuit court of appeals, or to the supreme court of a Territory, shall be allowed by a judge of the court appealed from or of the court appealed to, and shall be regulated, except as otherwise provided in the act, by the rules governing appeals in equity in the courts of the United States." Equity Rule 75 (b), 28 USCA § 723, provides that "the evidence to be included in the record shall not be set forth in full, but shall be stated in simple and condensed form," etc., and provides that such statement " * * * shall be approved by the court or judge. * * * When approved, it shall be filed in the clerk's office and become a part of the record for the purposes of the

appeal." The transcript on appeal contains a number of orders made by the referee in bankruptcy in connection with the payment of the expenses of watchmen and certain affidavits with reference thereto. The only way in which these records are authenticated is by the certificate of the clerk of the District Court. It does not appear that a statement was presented to the trial judge for allowance. This was necessary. Barber Asphalt Paving Co. v. Standard Asphalt & Rubber Co., 275 U. S. 372, 379, 48 S. Ct. 183, 72 L. Ed. 318; Equity Rule 75 (b), supra.

We will now consider whether or not the record should be returned to the trial court for proper settlement and authentication of a statement on appeal.

The transcript contains an order dated June 2, 1931, by the referee in bankruptcy reciting that the "saw mill property is encumbered by heavy mortgage to the extent, probably, of its entire value," and relieving the trustee in bankruptcy

—"of the obligation to maintain insurance or watchman upon such property, and to notify the mortgagee that insurance and watchman must be furnished by it at its own cost; and that the expense of watchman's services heretofore incurred by the court will be charged as a claim against the property as a court cost, superior to the claim of the mortgagee."

An undated order is also contained in the record, made by the referee in bankruptcy, stating that two watchmen had been regularly employed from October 24, 1930, to November 24, 1930, guarding and caring for the property of the West Coast Lumber Company, bankrupt, directing that the watchmen be paid $100 each for such services "and that same have been rendered, and should be paid as a preferred claim forthwith." In addition to these orders the transcript contains affidavits, one by J. B. Simmons, one of the watchmen, stating that the services of a watchman had been rendered, and that "the mortgagee-trustee, the Hibernia Commercial & Savings Bank of Portland arranged for Mr. Davis [the other watchman] and myself to continue as watchmen" after the employment by the trustee in bankruptcy terminated. The affidavit of Mr. Simmons stated that in his opinion it is necessary to have a watchman protect the property to avoid damage to and the removal of valuable machinery, and that he was told it was necessary in order to continue the insurance in full force and effect. The affidavit of the trustee stated that in his opinion the employment of watchmen for this purpose

was necessary. This affidavit contained the statement "that upon a hearing before the referee in bankruptcy, it was decided by the referee that the sums expended by him for watchmen's wages and the obligations incurred by him for watchmen's wages should become a claim against the property as a court cost, superior to the claim of the mortgagee." The affidavit apparently filed on behalf of the petitioner by the president of the Hibernia Commercial & Savings Bank stated that the affiant, John F. Daly, had never authorized or directed the trustee to hire watchmen or to contract any indebtedness on behalf of the Hibernia Commercial & Savings Bank or the Title & Trust Company. The attorney for the petitioner and for the Hibernia Commercial & Savings Bank stated that he had read the order of the referee in bankruptcy dated June 2, 1931, hereinabove stated, making the claim of the watchmen the claim prior to the mortgage, that he had no knowledge or notice of this order until the time of "the application of the Title & Trust Company for leave of this court to institute its suit to foreclose said mortgage; that his client, the Title & Trust Company, had no notice or knowledge of the aforesaid order and never had any hearing or day in court in this connection." This affidavit was denied by the attorney for the trustee in an affidavit asserting that on the 29th of September, 1932, he had submitted copy of the referee's order of June 2, 1931, in regard to watchmen's services to the attorney for the petitioner, and that the order remained in the possession of the petitioner until March 2, 1933.

The appellee contends that referee's order of June 2, 1931, referred to above, has never been objected to nor has it been reviewed in any manner, and therefore it is res judicata as to this question. He cites in this connection General Order in Bankruptcy No. 27 (11 USCA § 53) regulating the method of review of an order of the referee. In this connection it should be observed that Order 23, General Orders in Bankruptcy (11 USCA § 53), provides:

"In all orders made by a referee, it shall be recited, according as the fact may be, that notice was given and the manner thereof; or that the order was made by consent; or that no adverse interest was represented at the hearing; or that the order was made after hearing adverse interests."

The order of June 2d does not conform to this rule. This order may have been made ex parte. The attorney for the petitioner

814

affirmed on oath that he knew nothing about the order until the time of the proceedings on the petition for leave to foreclose. In a counter affidavit the attorney for the trustee states that as early as September 29, 1932, notice thereof was given to said attorney by furnishing him a copy of the order of June 2, 1931. We think the claim that the order of June 2, 1931, is res judicata upon the right of the trustee to a lien on the mortgaged property for $2,100 superior to the lien of mortgage cannot be maintained, because there is no showing that the mortgagee participated in the hearing upon which such order is based.

The burden of showing that the petitioner was bound by the order of June 2d rests upon the trustee and that burden has not been discharged.

We conclude that the trial judge was authorized to consider on its merits the question as to whether or not the sum of $2,100 paid out for watchmen's fees was or was not for the benefit of the mortgaged property. The order appealed from inferentially holds that this sum was expended and incurred by the trustee in the preservation of the mortgaged property. As has been stated, there are affidavits to support this conclusion, and, unless it can be said as a matter of law that the employment of watchmen by a trustee in bankruptcy to prevent the voiding of fire insurance policies which inured to the benefit of the mortgagee and to preserve possession of movable property which might otherwise be removed and to protect property which might otherwise be destroyed is not an expense for the benefit of the mortgagee, the order of the trial judge must be sustained. No authority has been cited to support such a doctrine and it is obvious that the mortgagee is primarily interested in the maintenance of adequate fire insurance and in the protection of such of the mortgaged property as is liable to destruction or removal. Whether or not it would have been a wiser policy for the trustee to surrender possession of the mortgaged property to the mortgagee or its representatives earlier in the proceedings is not before us for consideration. The trustee did maintain his possession and that possession was acquiesced in by the mortgagee until after the expenses in question had been incurred.

We have considered the matters presented in the briefs and by the assignments of error and this consideration leads us to the conclusion that the order should be affirmed.

It would therefore be an unnecessary expense to require the parties to prepare a statement on appeal for presentation to the trial judge. We content ourselves in this case with again calling the attention of the profession to the necessity of the statement on appeal in matters of equity or bankruptcy where it is desired to have this court review the findings of fact made by the trial judge. The fact that the trial court may have acted upon affidavits or depositions does not justify the presentation of such affidavits or depositions to this court except when incorporated in a statement of the evidence on appeal duly allowed and authenticated by the trial judge. In the case at bar the record is short and the emphasis must be placed upon authentication rather than condensation.

Order affirmed.